This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Jeffrey Farina, appeals from his convictions in the Summit County Court of Common Pleas for robbery and assault. We affirm.
On February 5, 2001, the Summit County Grand Jury indicted Defendant on two separate counts: (1) robbery, in violation of R.C. 2911.02(A)(3); and (2) assault, in violation of R.C. 2903.13(A). A jury found Defendant guilty on both counts. Following the jury's verdict, Defendant moved for a judgment of acquittal or alternatively, a new trial. The trial court denied Defendant's motion and subsequently, sentenced him accordingly. Defendant timely appealed the robbery and assault convictions raising one assignment of error for review.
ASSIGNMENT OF ERROR
 The [Defendant's] convictions for assault and robbery are against the manifest weight of the evidence.
In his sole assignment of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that the evidence presented by the State does not support his convictions, and thus, is against the manifest weight of the evidence. Defendant's assignment of error lacks merit.
"[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3, citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook, J. concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Furthermore, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of the fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4.
Defendant was found guilty of robbery, in violation of R.C.2911.02(A)(3), and assault, in violation of R.C. 2903.13(A). R.C.2911.02(A)(3) defines robbery as "attempting or committing a theft offense or in fleeing immediately after the attempt or offense" while "[u]s[ing] or threaten[ing] the immediate use of force against another." R.C. 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]"
At trial, Officer Jackson testified that Bonnie Shelton (Shelton), the victim, ran into the Akron police station and stood in a corner cowering, sobbing, and shaking. Further, Officer Jackson stated that Shelton had red marks around her neck, her hair was in disarray, and the top of her shirt had been stretched. Officer Jackson said that Shelton told him that Defendant hit her in the head and also said "Give me the keys I'm driving[,]" to which Shelton refused. Officer Jackson also testified that he explained the charges to Shelton and she agreed to sign a complaint against Defendant charging him with robbery and assault. On cross-examination, Officer Jackson acknowledged he was aware that Shelton retracted her accusation against Defendant.
Officer Stewart stated that Shelton entered the police station trembling and cried in a corner. Officer Stewart testified that Shelton said that Defendant had taken her car. Officer Stewart also declared that Shelton signed a complaint against Defendant charging him with robbery and assault. Lastly, Officer Stewart agreed he was cognizant that Shelton no longer claimed Defendant committed robbery or assault.
Officer McCain testified that Shelton was "absolutely shaking" and petrified. Moreover, Officer McCain had "never seen anybody that scared." When Officer McCain asked Shelton who had done this to her, Shelton responded "You don't understand. No. He'll kill me." Later, Officer McCain said that Shelton told her that Defendant stole her car. Officer McCain noted that Shelton had red marks on her neck and forehead, her hair was in disarray, and her shirt was pulled down from her shoulder. On cross-examination, Officer McCain confirmed she learned that Shelton recanted her allegations against Defendant.
Officer Armstead testified that on January 27, 2001, he found Defendant outside Shelton's apartment and the alleged stolen vehicle parked in the driveway. Additionally, Officer Armstead stated he discovered Shelton's car keys lying near the walkway adjacent to Defendant.
Shelton testified that Defendant wanted to drive her car, but she refused his request. Furthermore, Shelton stated that Defendant grabbed her neck and she did not "know if he was stumbling, falling, grabbing, whatever" but she "just freaked and took off running." Shelton recollected running to the Akron police station and incessantly crying and shaking. However, Shelton testified that Defendant did not commit robbery or assault, which contradicted her statements made to the police officers on January 27, 2001. Shelton explained that the contradicting stories arose because she was scared and confused on the night of the incident.
Notwithstanding the fact that Shelton signed a complaint charging Defendant with robbery and assault, told Officer Jackson that Defendant hit her in the head, told Officer McCain that Defendant stole her car, and her own testimony that she was "freaked out" and unable to regain her composure, Shelton now declares that Defendant did not commit robbery or assault. Defendant relies upon Shelton's apparent recantation to support his contention that the weight of the evidence does not support his convictions.
In the case sub judice, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence (Dec. 1, 1999), Lorain App. No. 98CA007118, unreported, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Defendant of robbery and assault. Accordingly, Defendant's assignment of error is overruled.
Defendant's sole assignment of error is overruled. The convictions of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
BATCHELDER, P.J. and CARR, J. concur.